**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| MINWOO PARK, | ) |
| | ) |
| Plaintiff, | )   Civil Action No. _____ |
| | ) |
| v. | ) |
| | )   **JURY DEMAND** |
| JEONG HEE KIM, CHOL WOO KIM, | ) |
| AND VP 1-1, INC. d/b/a VALUE PENNY, | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW Minwoo Park ("Plaintiff" or "Park"), and for his Complaint against Defendants, each of them, states and alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this action to secure redress for Defendants' violations of the federal and Tennessee securities laws and Tennessee law for fraud, intentional misrepresentation, negligent misrepresentation, rescission based on fraud, unjust enrichment, and for an accounting. In addition, Plaintiff brings claims for violations of the federal Racketeer Influenced & Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961, et seq.

2.      Plaintiff is the victim of an investment scheme that Defendants used to exploit a federal visa program as a means of defrauding him, an immigrant investor who was seeking a legal path to permanent residency in the United States.  Defendants defrauded Plaintiff on the basis of false and misleading information which has resulted in Plaintiff's loss of no less than

1

$521,675, with additional damages to be awarded at trial, in connection with his application for permanent residency through the EB-5 Immigrant Investor Visa Program ("EB-5 Visa Program").

3.      Plaintiff made a capital contribution of $500,000 to obtain equity ownership in the new commercial enterprise VP 1-1, Inc. d/b/a Value Penny ("VP1" or the "Corporation") as part of his application to the EB-5 Visa Program.  Defendants Jeong Hee Kim and Chol Woo Kim ("Mrs. Kim" and "Mr. Kim," individually and, collectively, the "Kim Defendants") incorporated VP1 in an effort to procure Plaintiff's capital contribution in VP1 under the guise of facilitating his application to the EB-5 Visa Program.

4.      At all times material to this action, the Kim Defendants controlled and made all business and investment decisions on behalf of VP1.  In exchange for Plaintiff's $500,000 investment, VP1 purportedly issued 200,000 shares of common stock to Plaintiff.  The common stock issued to Plaintiff constitutes the offering and sale of unregistered securities under federal law.

5.      The Kim Defendants induced Plaintiff to invest in VP1 based on representations that the Kim Defendants would create VP1 as a new commercial enterprise in which Plaintiff could invest.  The Kim Defendants also represented the investment would comply with the EB-5 Visa Program so that U.S. Citizenship and Immigration Services ("USCIS") would grant Plaintiff and his children lawful permanent residence in the U.S.

6.      To that end, the Kim Defendants warranted to Plaintiff that they would invest his $500,000 solely to fund and operate VP1 by paying for startup and operations costs.  Moreover, the Kim Defendants warranted that Plaintiff's purchase of 200,000 shares of common stock with his $500,000 investment would buy him a 20% ownership stake in VP1.

4840-9880-5656v17
2948778-000001

7.     However, the Kim Defendants employed a fraudulent scheme to divert Plaintiff's investment out of VP1 for purposes unrelated to the funding and operation of VP1's business and the requirements of Plaintiff's EB-5 application.  In addition, the Kim Defendants employed a fraudulent scheme to unilaterally convert Plaintiff's equity interest in the Corporation to a debt obligation, i.e., a loan.

8.     As a result of using Plaintiff's investment for purposes unrelated to VP1's business and de-equitizing Plaintiff of his ownership in VP1, Defendants have caused Plaintiff to suffer damages in an amount no less than $521,675, the amount of his investment in VP1 and the related fees and expenses incurred to apply to the EB-5 Visa Program.  More importantly to Plaintiff, Defendants' wrongful conduct has resulted in Plaintiff being unable to obtain a green card through the EB-5 Visa Program through his investment in VP1 and has left Plaintiff with no return on his investment.

## **PARTIES**

9.     Minwoo Park is a citizen of the Republic of Korea who currently resides in Daegu Metropolitan City, Republic of Korea.  Park invested $500,000 in Defendant VP 1-1, Inc. d/b/a Value Penny as part of his application for permanent residency in the U.S. for himself and his two children.

10.     Defendant Jeong Hee Kim is an individual and a citizen of Shelby County, Tennessee for jurisdictional purposes.  At all times material to this action, Kim was the majority shareholder and Chief Executive Officer and Chairman of the Board of Directors of VP1-1, Inc. d/b/a Value Penny.

11.     Defendant Chol Woo Kim is an individual and a citizen of Memphis, Tennessee. Upon information and belief, Jeong Hee Kim and Chol Woo Kim are married.

3

12.     Defendant VP1-1, Inc. d/b/a Value Penny is a Tennessee corporation with its principal place of business located at 3830 Hickory Hill Rd., Memphis, Tennessee 38115.  VP1-1, Inc. d/b/a Value Penny may be served with process on its Registered Agent, Lestarria Brown, who is also located at 3830 Hickory Hill Rd., Memphis, Tennessee 38115.

**RELEVANT NON-PARTIES**

13.     B&B Beauty Supply, Inc. ("B&B") is a Tennessee corporation with its principal place of business located in Memphis, Tennessee.  B&B is owned by Mrs. Kim and managed and controlled by the Kim Defendants.

14.     B&B 2, Inc. ("B&B 2") is a Tennessee corporation with its principal place of business located in Memphis, Tennessee.  B&B 2 is owned by Mrs. Kim and managed and controlled by the Kim Defendants.  Both B&B and B&B 2 are beauty supply retail stores.

15.     B&B Capital Holdings, Inc. ("B&B Capital") is a Tennessee Corporation with its principal place of business in Memphis, Tennessee.  Upon information and belief, B&B Capital is owned by Mrs. Kim and managed and controlled by the Kim Defendants.

**JURISDICTION AND VENUE**

16.     Subject matter jurisdiction over this action is vested in this Court under the Securities Act of 1933, 15 U.S.C. § 77v, and the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, as it alleges violations of the federal securities laws, and under the RICO Act, 18 U.S.C. § 1961 et seq., all of which involve federal questions of law under 28 U.S.C. § 1331.

17.     Alternatively, this Court has jurisdiction over this action under 28 U.S.C. 1332(a)(2) based on complete diversity between the parties and that the amount in controversy exceeding $75,000, exclusive of interests and costs.

4

18.     Additionally, this Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

19.     This Court has personal jurisdiction over the Defendants, and venue is proper in this Court under 28 U.S.C. § 1391 because Defendants are located and do business in the Western District of Tennessee, and a substantial part of the acts or omissions giving rise to the causes of actions stated herein occurred in this District.

## FACTS

### The EB-5 Visa Program

20.     Congress created the employment-based fifth preference immigrant visa category ("EB-5 Visa Program" or the "Program") in 1990 in an effort to boost the U.S. economy.  The Program provides a prospective immigrant investor with the opportunity to become a permanent resident by investing in the United States.

21.     Under the EB-5 Visa Program, foreign investors who invest capital in a "commercial enterprise" in the United States may file what is called an I-526 Petition with the U.S. Citizenship and Immigration Services (USCIS) and receive conditional permanent residency status for a two year-period.  USCIS defines a "commercial enterprise" as any for-profit activity formed for the ongoing conduct of lawful business.

22.     Under the EB-5 Visa Program, there are two ways to qualify for an EB-5 Visa: (1) The Standalone EB-5 Visa program, which requires the creation of ten (10) 10 jobs directly in the commercial enterprise and an at-risk $1 million investment (or $500,000 if the project is located in a "targeted employment area," e.g., a rural area or one with high unemployment), or (2) The EB-5 Regional Center Pilot Program, which requires the creation of ten (10) 10 jobs

4840-9880-5656v17
2948778-000001

directly or indirectly and a $1 million investment (or $500,00 if the project is located in a "targeted employment area") within a Designated Regional Center.

23.    The majority of EB-5 Visas are administered through EB-5 regional centers, which are entities that pool investments and are authorized to develop projects across a large swath of U.S. metropolitan and rural areas.  However, many EB-5 Visas are issued to immigrant investors who invest in an EB-5 commercial enterprise directly.

24.    If the foreign national investor's initial petition is approved, the investor and their dependents will usually be granted conditional permanent residency in the U.S., which is valid for two years.

25.    Within the 90-day period before the conditional permanent residence expires, the investor must submit evidence to USCIS documenting that the full required investment has been made and maintained and that at least ten (10) full-time jobs for U.S. workers have been created (or maintained).

26.    After an immigrant investor passes all checks by USCIS and the immigrant investor demonstrates to USCIS that his or her full capital contribution was used and/or invested into a job-creating entity, and that entity produced at least ten (10) full-time jobs for U.S. workers, the investor (and his or her immediate family) is usually granted unconditional lawful permanent residency in the U.S. (i.e., a "green card").

**The Investment Scheme**

27.    In late 2016/early 2017, Plaintiff became interested in applying for green cards for his family because he wanted his young children to grow up in the United States.  Around that time, Plaintiff expressed his general interest to Mr. Kim during a meeting in Korea.  During the same meeting, Mr. Kim stated to Plaintiff that he should apply to the EB-5 Visa Program and,

6

instead of investing in a regional center, the Kim Defendants could incorporate a new commercial enterprise in which Plaintiff could invest directly to allow him to apply to the Program.  Mr. Kim explained that while he did not need Plaintiff's money because he was already a millionaire from his other businesses, he was interested in helping Plaintiff invest in a new commercial enterprise to gain permanent residence in the United States.  Shortly thereafter, Mr. Kim returned to Memphis.

28.     Between January and March 2017, Mr. Kim continued to speak with Plaintiff over the phone via KakaoTalk, sometimes called KaTalk, which is a free mobile instant message application for smartphones with free text and call features.  Mr. Kim reiterated that Plaintiff should allow the Kim Defendants to form a new commercial enterprise so that Plaintiff could invest in it and apply for the EB-5 Visa Program.

29.     Plaintiff accepted the Kim Defendants' offer, and VP1 was formed by the Kim Defendants in March 2017 to operate a beauty and wig store at 3830 Hickory Hill Rd., Memphis, TN 38115.  VP1, doing business as Value Penny, is described as a retail store offering a variety of beauty supplies.  Specifically, VP1 was formed to do business as "Value Penny" and sell human hair extensions, hair and body products, general merchandise, costume jewelry, and synthetic hair extensions.

30.     The Kim Defendants informed Plaintiff that they were incorporating VP1 with the specific purpose of creating a new commercial enterprise in which Plaintiff could directly invest to obtain a green card through the EB-5 Visa Program.

31.     At all times material to this action, including the present, VP1 was and is owned, managed, and controlled by Mrs. Kim.  Mrs. Kim has been the sole director of the Corporation since its formation.  Mrs. Kim also appointed herself to hold the officer roles of Chairman,

Secretary, and President of VP1.  Mrs. Kim appointed Mr. Kim to act as the Corporation's Vice President.

32.     Upon information and belief, the Kim Defendants designed and proposed the formation of VP1 and the structure of Plaintiff's investment when they learned that Plaintiff was generally interested in applying to the EB-5 Visa Program to obtain visas for himself and his children.  The Kim Defendants  represented to Plaintiff that they were very successful with their other business ventures in the beauty products industry and had become millionaires from operating their businesses.  Plaintiff was aware that the Kim Defendants owned and operated several other beauty product supply businesses.

33.     After the Kim Defendants formed VP1 and based on their representations, Plaintiff agreed to invest $500,000 in VP1.  Upon information and belief, the Kim Defendants promised Plaintiff that they would structure his investment in VP1 with the objective of assisting Plaintiff with his application to the EB-5 Visa Program.

34.     Specifically, Defendants represented to Plaintiff that his capital investment would be invested into VP1 for the benefit of VP1, such as purchasing inventory and equipment for the business and hiring additional employees.   Defendants' representations were material to Plaintiff's decision to invest in VP1 because, for example, a direct investor (i.e., a non-regional center investor) cannot qualify for a green card under the Program by investing part of his $500,000 (or $1 million) in one commercial enterprise, and the other part of his investment in a separate commercial enterprise, that together are not wholly owned by a single commercial enterprise.[1]  The Kim Defendants were aware of the requirements of the EB-5 Visa Program.

---

[1] *See* U.S. CITIZENSHIP AND IMMIGRATION SERVS., POLICY MANUAL VOL. 6, (2019), https://www.uscis.gov/policy-manual/volume-6-part-g-chapter-2#footnotelink-39.

4840-9880-5656v17
2948778-000001

35.     Plaintiff and the Kim Defendants agreed that Plaintiff's $500,000 capital investment in VP1 would buy a 20% ownership stake in the Company.  It was also the parties' understanding that Mrs. Kim would own 80% of VP1 based on contributions to the Company of equipment worth (i.e., with a cash value equivalent to) $98,600, furniture & fixtures worth $12,840, and inventory worth $331,210.  To that end, the Board of Directors, i.e., Mrs. Kim, issued 1,000,000 shares of common stock, with 800,000 shares being issued to Jeong Hee Kim and 200,000 shares being issued to Plaintiff.  Acquiring an ownership interest was material to Plaintiff's decision to invest in VP1 because a loan to a new commercial enterprise does not constitute an investment for EB-5 purposes.  *See* 8 C.F.R. § 204.6(e).  In addition to the stock purchase, Mrs. Kim appointed Plaintiff to be an officer of the Corporation, naming him as Treasurer.

36.     On March 10, 2017, VP1 issued a stock certificate to Plaintiff certifying that he "is the registered holder of 200,000 Shares of the Capital Stock transferable only on the books of the Corporation by the holder."  Another certificate of 800,000 shares was issued to Mrs. Kim.  Mrs. Kim signed both certificates in her capacity as the President and Secretary of the Corporation.

37.     The issuance of the certificates was recorded in the Corporation's stock ledger, reflecting that Plaintiff's contribution to the Corporation was $500,000 in cash for 20% ownership in the Corporation, and Mrs. Kim's contribution was Equipment with a cash equivalent value to $98,600, Furniture & Fixture worth $12,840, Inventory worth $331,210, and a "Leasehold Improvement" $57,350.

38.     Based on Defendants' statements and issuance of the common stock, Plaintiff took out a loan from his employer in Korea, Booksan Corp., in the amount of KRW 600,000

9

($527,797 USD), using his shares of Booksan Corp. as security for the loan.  Under the terms of the loan, Plaintiff agreed to pay off the loan in 5 years from August 30, 2017 at an annual interest rate of 4.6 % of the principal.

39.     Moreover, Plaintiff also retained counsel to apply to the EB-5 Visa Program. Defendants assisted Plaintiff and his counsel in the development of VP1's EB-5 business plan that was submitted to USCIS as part of the I-526 petition.  In particular, upon information and belief, Defendants made statements and representations to Plaintiff and his counsel that, among other things, (1) Defendants issued Plaintiff 200,000 shares of common stock in exchange for his $500,000 investment, which constituted a 20% ownership stake in the Corporation, and that (2) VP1 would manage and control Plaintiff's investment to pay for the initial startup and operating costs of VP1.

40.     As part of his overall investment of $500,000 in VP1 and application to the EB-5 Visa Program, Plaintiff incurred additional expenses of $3,000 for the development of the VP1 EB-5 business plan, $15,000 in legal fees for the preparation of his I-526 petition, and $3,675 for the filing of the I-526, amounts to a total of not less than $521,675 expended in effort to obtain a green card through the EB-5 Visa Program.

**Misuse and Misappropriation of Plaintiff's Investment**

41.     On September 5, 2017, Plaintiff wired his investment of $500,000 in cash to VP1's Regions Bank Advantage Business Checking Account *4956 (the "Regions Account"). Upon information and belief, the Kim Defendants assured Plaintiff that his entire investment in VP1 would to be used to develop the specific EB-5 project described by the Kim Defendants' and VP1's business plan.

10

42.     Unbeknownst to Plaintiff at the time, however, his $500,000 capital contribution was not used to invest in VP1.  Within weeks of receiving Plaintiff's wire of $500,000, the Kim Defendants began withdrawing large sums of money from the Regions Account to fund and operate their separate businesses.

43.     The Kim Defendants' withdrawals from the Regions account were ostensibly for business purposes for VP1 because they were going to other beauty supply businesses to purchase equipment and inventory for VP1.  However, in reality, the Kim Defendants were not making the withdrawals to benefit VP1; instead, they were diverting Plaintiff's capital investment to fund and operate their separate companies, B&B and B&B 2.

44.     Upon information and belief, over the next two months, the Kim Defendants made 5 payments totaling $120,000 from the Regions Account to businesses on behalf of the Kim Defendants' separately owned companies.   Specifically, upon information and belief, Defendants directed that these withdrawals or debits be made to operate and manage B&B and B&B 2.

45.     On October 23, 2017, Defendants directed that a check for $20,000 be issued to an entity named "Global Beauty Corp."  The memo on the check states that it is for "B&B," which, upon information and belief, is B&B Beauty Supply, Inc., an entity owned and controlled by the Kim Defendants.  Upon information and belief, Defendants made this payment from VP1's Regions Account to purchase inventory for B&B and/or B&B 2, and not VP1.

46.     The next day, on October 24, 2017, Defendants directed that a check for $21,000 be issued to B&B 2.  The memo on the check states that it is for "Shake N Go product purchase." Upon information and belief, Shake N Go is a beauty  wholesale supplier, and this check was issued to purchase inventory for B&B 2.  On October 27, 2017, B&B 2 issued check number

11

2178 to Shake N Go for $21,042.00, which, upon information and belief, came from the $20,000 that VP1 paid to B&B 2.  Upon information and belief, the inventory that B&B 2 purchased inventory from Shake N Go with Plaintiff's investment in VP1, yet VP1 never received any money, inventory, or any other thing of value from the transaction between B&B2 and Shake N Go.

47.    Shortly thereafter, on October 26, 2017, Defendants directed that VP1 pay a debit of $20,000 out of the Regions Account to "Aura Enterprises TNBB03-B&B."  Upon information and belief, Defendants made this payment from VP1's Regions Account to purchase inventory for B&B and/or B&B 2, and not VP1.

48.    On November 3, 2017, another debit of $20,000 was made to "Aura Enterprises SCNB02/TNB."  Prior to the debit, on October 31, 2017, Defendants directed that a check for the same amount be made out to Global, which included in the memo that the check was for "B&B."  Upon information and belief, Defendants made this payment from VP1's Regions Account to purchase inventory for B&B and/or B&B 2, and not VP1.

49.    On November 9, 2017, a debit of $20,000 was made to "Aura Enterprises TNVP01-VAL."  Upon information and belief, Defendants made this payment from VP1's Regions Account to purchase inventory for B&B and/or B&B 2, and not VP1.

50.    On November 21, 2017, a debit of $20,000 was made to "Aura Enterprises TNSB05/S for $20,000."  Upon information and belief, Defendants made this payment from VP1's Regions Account to purchase inventory for B&B, and not VP1.

51.    For these transactions, Mrs. Kim, acting unilaterally as the sole director and President of the Corporation, executed Board resolutions approving the purchase of business inventory, purportedly for VP1.  For example, Mrs. Kim executed a Board resolution on behalf

12

of VP1 justifying the purchase of "all or substantially all of the business inventory (Beauty Supply products) of B&B Beauty Supply."

52.     However, upon information and belief, the statements above within these resolutions are false; instead of purchasing the inventory for VP1, the Kim Defendants diverted Plaintiff's investment in VP1 for the EB-5 Visa Program to fund their businesses for their own benefit, separate from VP1 and unrelated to Plaintiff's application to the EB-5 Visa Program.

53.     In fact, the Kim Defendants never intended to use Plaintiff's investment in a manner that would satisfy the requirements of the EB-5 program, a material fact they failed to disclose to Plaintiff at the time of his investment.

54.     However, by making the withdrawals from the VP1 Regions Account seem as if they were for legitimate businesses purposes for VP1, the Kim Defendants concealed and suppressed and/or caused the concealment and suppression of this information for months from Plaintiff while continuing to cause VP1 to divert substantial sums of Plaintiff's capital contribution to the benefit of the Kim Defendants' separate businesses.  Despite being named the purported Treasurer of VP1, the Kim Defendants have never given Plaintiff access to the Regions Account or any of its statements.

**Fraudulent Conversion of Plaintiff's Investment from Equity to Debt**

55.     Beginning around late July/August of 2018, Mr. Kim began making statements to Plaintiff that the Corporation was not doing well financially.  Specifically, Mr. Kim stated to Plaintiff that his $500,000 investment and EB-5 application were in jeopardy if he did not invest more money into VP1.  In addition, Mr. Kim began exhibiting behavior that struck Plaintiff as odd, and it appeared to Plaintiff that Mr. Kim no longer seemed to have any interest in operating VP1 with Ms. Kim and began shirking his fiduciary and corporate duties as an officer of VP1.

13

56.     Mr. Kim's statements and behavior began to concern Plaintiff about his investment and, more importantly, his I-526 application to the EB-5 Visa Program.   When Plaintiff inquired about the status of his investment and an update regarding the Corporation, he received a copy of VP1's 2017 Corporation Income Tax Return and accompanying documentation submitted to the Internal Revenue Service (IRS).

57.     To Plaintiff's shock, the Kim Defendants represented to the IRS that Mrs. Kim owned 100% of VP1's shares and listed Plaintiff's $500,000 investment in the Corporation as a "shareholder loan."

58.     Plaintiff immediately attempted to contact Mr. Kim to inquire about the status of his shares in VP1.  In response to Plaintiff's inquiry, Mr. Kim sent Plaintiff a document titled "MINUTES OF ORGANIZATION MEETING OF INCORPORATORS VP 1-1, INC: CHANGE BY LAW WITH CHANGING THE SHAREHOLDER; SHAREHOLDING LOAN AGREEMENTS and ELECT DIRECTOR.  After falsely reporting that Mrs. Kim owned 100% of the Corporation's shares, Mr. Kim's conduct constituted an egregious attempt to force Plaintiff to agree to convert his equity interest into a debt obligation.

59.     Specifically, the document that Mr. Kim sent to Plaintiff comprised of three separate documents:  (1) Meeting minutes from the meeting of the "Incorporators" with the dates and signatures left blank indicating that the Corporation had accepted a "loan" of $500,000 from a "shareholder;" (2) amended and restated Bylaws of the Corporation; and (3) as "Exhibit B" to the amended Bylaws, a "Shareholder Loan Agreement," which attempted to categorize Plaintiff as the "Lender" and characterize his entire stock purchase in the Company as a $500,000 "Loan."  In a thinly-veiled attempt to induce Plaintiff to agree to the conversion of his equity to debt, the Shareholder Loan Agreement also stated that the signatory on behalf of VP1 would

14

personally guarantee the repayment of the debt to Plaintiff as "Lender," and that an initial, lump sum payment of $230,000 would be made on August 10, 2018.

60.     Plaintiff refused to sign the Shareholder Loan Agreement but immediately demanded the return of his money.  Despite repeated promises to return Plaintiff's investment to him, the Kim Defendants have not repaid any of Plaintiff's initial investment to him, and, based on their conduct, it appears that they never intended to.

61.     At all times material to this action, neither Mr. nor Mrs. Kim ever disclosed to Plaintiff that they, as the sole director, owner, and controllers of the Corporation, were going to convert Plaintiff's $500,000 equity stake in VP1 to a debt.

62.     The Kim Defendants stated to Plaintiff that they were going to incorporate VP1 for the express purposes of obtaining his green card by applying to the EB-5 Visa Program.

63.     Defendants went even further and assisted Plaintiff and his counsel in the development of VP1's EB-5 business plan that was submitted to USCIS as part of the I-526 petition.  In particular, Defendants made statements and representations to Plaintiff and his counsel that, among other things, (1) Defendants issued Plaintiff 200,000 shares of common stock in exchange for his $500,000 investment, which constituted a 20% ownership stake in the Corporation, and that (2) VP1 would manage and control Plaintiff's investment to pay for the initial startup and operating costs of VP1.  Upon information and belief, the Kim Defendants were aware of the requirements that Plaintiff's $500,000 investment be actually invested in the company for an ownership stake, that ten (10) jobs must be created with the investment and that a loan from an alien investor to a company would not satisfy the EB-5 regulations.  *See* 8 C.F.R. § 204.6(e).

15

64.     The unlawful acts committed by Defendants caused Plaintiff to submit a materially inaccurate I-526 petition to USCIS with respect to his equity ownership in VP1 and his investment being used for VP1's startup and operating expenses.  This, in addition to Defendants' other unlawful conduct, have rendered it impossible for Plaintiff to proceed with his application to the EB-5 Visa Program, thereby preventing him from obtaining a permanent green card through his investment in VP1.

65.     Moreover, on information and belief, VP1, acting through the Kim Defendants, has failed to create the requisite number of jobs to allow Plaintiff to obtain conditional permanent residency.

## CAUSES OF ACTION

### COUNT ONE  – Offer for Sale of Unregistered Security – Section 12(a)(1) of the Securities Act of 1933

66.     Plaintiff incorporates each preceding paragraph as if fully stated herein.

67.     The conduct described above involved the offer for sale of unregistered "securities" within the meaning of Section 3(a)(10) of the Securities Exchange Act, 15 U.S.C. § 78c(a)(10).

68.     Under Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77*l*(a)(1), "any person who offers or sells a security . . . shall be liable to the person purchasing such security from him."  Section 12(a)(1) applies strict liability for the offer and sale of unregistered securities to any person who actively solicited the sale of unregistered securities to Plaintiff and did so for VP1's or their own financial gain.

69.     The shares of stock and certificates on which they were issued by VP1 constitute a security as defined by the federal securities laws.

16

70.     Upon information and belief, Defendants solicited VP1's offering to Plaintiff in an effort to induce him to invest in the Corporation, and Defendants were aware that Plaintiff intended to use his investment in the Corporation to apply for a green card under the EB-5 Visa Program.

71.     Plaintiff reasonably relied upon Defendants' statements and conduct in deciding to invest in VP1 for the purposes of petitioning for a green card under the EB-5 Visa Program. Plaintiff's ability to obtain equity in the Corporation was material to his investment in the Corporation because of the EB-5 Visa Program's requirements, of which Defendants were aware.

72.     Upon information and belief, Defendants solicited Plaintiff to initially invest in VP1 by purchasing stock in the Corporation with the intent that Defendants would later convert Plaintiff's capital investment from an equity transaction to a debt obligation.

73.     Defendants knowingly or recklessly failed to disclose material facts regarding their intent to convert Plaintiff's equity interest to a debt obligation when they were soliciting him to invest in VP1.

74.     As the Kim Defendants owned and/or managed and controlled every aspect of VP1's business, they were able to conceal their intent to convert Plaintiff's equity interest to a debt obligation.

75.     VP1 has not issued a registration statement in connection with its offering to Plaintiff, in violation of Section 5 of the Securities Act of 1933.

76.     The Kim Defendants were motivated by personal financial gain.

77.     As a result of Defendants' wrongful conduct, Plaintiff is entitled to rescission to recoup the full amount of his investment in VP1.

**COUNT TWO – Sale of Security with Untrue Statement or Omission – Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(a)(2)**

78.     Plaintiff incorporates each preceding paragraph as if fully stated herein.

79.     Defendants' conduct described above involved the offer for sale of unregistered securities as defined by Section 3(a)(10) of the Securities Exchange Act, 15 U.S.C. § 78c(a)(10),, and was done through the United States mails and by the use of other means and instrumentalities of interstates commerce, and took place within the Western District of Tennessee.

80.     Defendants solicited Plaintiff to invest $500,000 in VP1.

81.     As part of their solicitation, Defendants assured Plaintiff that his investment would gain him equity in the Corporation in order for him to petition for a green card under the EB-5 Visa Program.

82.     Defendants failed to disclose that they would actually retain 100% ownership of VP1.

83.     They also assured Plaintiff that the investment would be used in a manner that was complaint with the EB-5 guidelines and would be used to create ten (10) jobs as required by the EB-5 program.

84.     Defendants further failed to disclose that they would use Plaintiff's investment to fund their other businesses and that they had no intention of using the full amount of his investment to create ten (10) full-time jobs at VP1.

85.     Defendants either knew that their statements and omissions to Plaintiff regarding the nature of his investment were false or were reckless in their disregard as to whether their statements and omissions were false or materially misleading.  In addition, Defendants either

18

knew or were reckless in their disregard that their false or materially misleading statements or omissions would induce Plaintiff to invest in VP1.

86.     As the Kim Defendants owned and/or managed and controlled every aspect of VP1's business, they were able to conceal their true intent to convert Plaintiff's equity interest to a debt obligation and to divert the investment to unlawful purposes, i.e., the operation of the Kim Defendants' separate, unrelated businesses despite Plaintiff's reasonable efforts to ascertain the status of his investment in the Corporation.

87.     Defendants were motivated by personal financial gain in making these false and materially misleading statements to Plaintiff.

## COUNT THREE – Fraud in the Offer or Sale of Securities – Violations of Section 10(b) of the Exchange Act of 1934 and Rule 10b-5

88.     Plaintiff incorporates each preceding paragraph as if fully stated herein.

89.     By engaging in the conduct described above, Defendants directly or indirectly, in the offer or sale of securities, and by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails directly or indirectly, with scienter: (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit on the purchaser.

90.     Defendants knew, or were reckless in their disregard, that they employed devices, schemes, and artifices to defraud; made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under

which they were made, not misleading; and engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon other Plaintiff.

91.     By engaging in the conduct described above, the Kim Defendants and VP1 each violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5, and 10b-5(c) thereunder, 17 C.F.R. §§ 240.10b-5(a) & 240.10b-5(c).

### COUNT FOUR –Fraud/Intentional Misrepresentation Under Tennessee Common Law

92.     Plaintiff incorporates each preceding paragraph as if fully stated herein.

93.     Upon information and belief, in late 2016/early 2017, Mr. Kim told Plaintiff during their meeting in Korea that Plaintiff should invest in a new commercial enterprise started by the Kim Defendants in order to apply for the EB-5 Visa Program.

94.     Between January and into March 2017, Defendants continued to solicit Plaintiff to invest in VP1 by promising him that they would structure his investment in the Corporation with the objective of assisting Plaintiff with his application to the EB-5 Visa Program.

95.     Specifically, Defendants stated to Plaintiff that his capital contribution would be invested into VP1 in exchange for stock in the Corporation and used for the benefit of VP1's business, such as the purchase of inventory and equipment for the business and the hiring of additional employees.

96.     Further, upon information and belief, Defendants assisted Plaintiff and his counsel in the development of VP1's EB-5 business plan that was submitted to USCIS as part of the I-526 petition.  In particular, upon information and belief, Defendants made statements and representations to Plaintiff and his counsel that, among other things, (1) Defendants issued Plaintiff 200,000 shares of common stock in exchange for his $500,000 investment, which

constituted a 20% ownership stake in the Corporation, and that (2) VP1 would manage and control Plaintiff's investment to pay for the initial startup and operating costs of VP1.

97.     Defendants' statements regarding Plaintiff's equity in the VP1 were material to his decision to invest in VP1 because he needed to obtain ownership in the Corporation for his EB-5 Visa Program Application.

98.     Plaintiff reasonably relied upon Defendants' representations regarding the structure of Plaintiff's equity investment in VP1.

99.     Defendants' statements and representations to Plaintiff regarding the structure of his investment in VP1 were false and misleading, as, upon information and belief, Defendants knew when they were making these statements and representations that they were going to convert Plaintiff's equity to debt and represent that Mrs. Kim owned 100% of the Corporation's shares.

100.    Moreover, Defendants' statements and representations to Plaintiff regarding the use of his investment in VP1 were false and misleading as, upon information and belief, Defendants knew when they made the statements and representations that they were going to divert Plaintiff's investment from VP1 and use Plaintiff's investment to fund and operate the Kim Defendants' other businesses.

101.    Defendants either knew that their statements to Plaintiff regarding the nature of his investment were false or were reckless in their disregard as to whether their statements were false or materially misleading.  In addition, Defendants either knew or were reckless in their disregard that their false or materially misleading statements or omissions would induce Plaintiff to invest in VP1.

4840-9880-5656v17
2948778-000001

102.    As a result of Defendants' conduct, Plaintiff has been damaged by the unlawful conversion of his equity contribution to debt, paying at least $21,675 in legal and related fees and expenses for the submission of a materially inaccurate I-526 petition, and the resulting inability to proceed with his EB-5 application.   Thus, Defendants' conduct has damaged Plaintiff's investment in VP1 in an amount to proven at trial but no less than $521,675.

**COUNT FIVE – Negligent Misrepresentation Under Tennessee Common Law**

103.    Plaintiff incorporates each preceding paragraph as if fully stated herein

104.    Defendants negligently made false oral and written representations to Plaintiff about the structure and use of Plaintiff's investment in VP1, and they concealed material information regarding both, including but not limited to their conversion of Plaintiff's equity interest in the Corporation to a debt obligation, Defendants' commitment to further Plaintiff's EB-5 application, and the use of Plaintiff's investment to operate and invest in the Kim Defendants' other businesses, as outlined in greater detail above.

105.    At bottom, Defendants failed to exercise ordinary or even the slightest care in making such representations to Plaintiff.

106.    Based upon the Kim Defendants' past successes with their ongoing business operations and their representations that they were going to form VP1 as a new commercial enterprise so Plaintiff could invest in it and to apply for the EB-5 Visa Program, Plaintiff reasonably relied upon the information supplied to Plaintiff regarding the structure and use of his $500,000 capital contribution to VP1.

107.    As a result of the Kim Defendants' negligent misrepresentations and omissions, Plaintiff has been damaged in an amount to be proven at trial but no less than $521,675.

4840-9880-5656v17
2948778-000001

**COUNT SIX – Rescission Based on Fraud**

108.    Plaintiff incorporates each preceding paragraph as if fully stated herein.

109.    As alleged above, Defendants made several promises to Plaintiff that they never intended to perform.  In late 2016/early 2017, Mr. Kim told Plaintiff that he should apply for the EB-5 Visa Program by investing in a new commercial enterprise that the Kim Defendants would create with that goal in mind.  Defendants promised they would structure his investment in VP1 with the objective of assisting Plaintiff with his application to the EB-5 Visa Program.

110.    Specifically, Defendants stated to Plaintiff that his capital contribution would be invested into VP1 in exchange for stock in the Corporation and used for the benefit of VP1's business, such as the purchase of inventory and equipment for the business and the hiring of additional employees, in furtherance of his EB-5 application.

111.    Additionally, Defendants assisted Plaintiff and his counsel in the development of VP1's EB-5 business plan that was submitted to USCIS as part of the I-526 petition.   In particular, upon information and belief, Defendants made statements and representations to Plaintiff and his counsel that, among other things, (1) Defendants issued Plaintiff 200,000 shares of common stock in exchange for his $500,000 investment, which constituted a 20% ownership stake in the Corporation, and that (2) VP1 would manage and control Plaintiff's investment to pay for the initial startup and operating costs of VP1.

112.    Defendants' statements regarding Plaintiff's equity in the VP1 were material to his decision to invest in VP1 because he needed to obtain ownership in the Corporation for his EB-5 Visa Program Application.

113.    Plaintiff justifiably relied upon Defendants' representations regarding the structure of Plaintiff's equity investment in VP1.

114.    Defendants' statements and representations to Plaintiff regarding the structure of his investment in VP1 were false and misleading, as, upon information and belief, Defendants knew that they would later convert Plaintiff's equity to debt and represent that Mrs. Kim owned 100% of the Corporation's shares.

115.    Moreover, Defendants' statements and representations to Plaintiff regarding the use of his investment in VP1 were false and misleading as, upon information and belief, Defendants diverted Plaintiff's investment from VP1 and used Plaintiff's investment to fund and operate the Kim Defendants' other businesses, which were unrelated to VP1 and Plaintiff's EB-5 application.

116.    As a result of Defendants' fraudulent and intentionally misleading statements and conduct, Plaintiff has been damaged and is entitled to rescission and repayment of the entire amount of his $500,000 investment in VP1 and at least $21,675 in related fees and expenses.

## COUNT SEVEN – Accounting

117.    Plaintiff incorporates each preceding paragraph as if fully stated herein.

118.    As the sole director, owner, and/or controllers of VP1, Defendants owe a duty to Plaintiff and owe funds to Plaintiff that cannot be ascertained without an accounting, the means of which are within the exclusive knowledge and control of Defendants.

119.    As such, Plaintiff hereby demands and is entitled to an accounting of all financial activities, conduct, and information relative to the affairs of Defendants and, in particular, to VP1's Regions Account and the accounts of B&B and B&B 2.

## COUNT EIGHT – Violations of the Tennessee Securities Act of 1980 - Unlawful Sale of Security under Tenn. Code Ann. § 48-1-104

120.    Plaintiff incorporates each preceding paragraph as if fully stated herein.

24

121.     Plaintiff's $500,000 investment in VP1 in exchange for 200,000 shares of common stock amounted to the purchase of unregistered securities from VP1.

122.     As the owner and sole director of the Corporation, Mrs. Kim caused VP1 to issue the shares of stock to be sold in exchange for value that were not registered by coordination or qualification under Tenn. Code Ann. §§ 48-1-105 & 48-1-106, or exempt from registration under the Tennessee Securities Act of 1980 (the "Tennessee Securities Act").

123.     Additionally, Mr. Kim, in his role as Vice President and through his false statements regarding the structure of Plaintiff's investment in VP1, materially aided and abetted the sale of unregistered securities from VP1 to Plaintiff in the form of common stock.

124.     As a result, Plaintiff has been damaged in an amount to be proven at trial.

### COUNT NINE – Violations of the Tennessee Securities Act of 1980 - Fraud or Misrepresentation under Tenn. Code Ann. § 48-1-121

125.     Plaintiff incorporates each preceding paragraph as if fully stated herein.

126.     Each Defendant's conduct concerning Plaintiff's investment in VP1 constituted the offer and sale of securities under the Tennessee Securities Act.

127.     Defendants were sellers under the Tennessee Securities Act, as their acts and omissions where a substantial contributing factor in VP1's issuance of its unregistered securities to Plaintiff.

128.     As described in greater detail above, Defendants made untrue statements of a material fact or omitted material facts to Plaintiff regarding the sale and issue of VP1's unregistered securities.

4840-9880-5656v17
2948778-000001

129.    Plaintiff justifiably relied on Defendants' statements in connection with his decision to invest $500,000 in VP1 in exchange for shares of common stock and to pay $21,675 in legal fees and related expenses to apply to the EB-5 Visa Program.

130.    As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered damages in an amount to be proven at trial.

### COUNT TEN – Unjust Enrichment

131.    Plaintiff incorporates each preceding paragraph as if fully stated herein.

132.    By their wrongful acts and omissions, Defendants have been unjustly enriched at Plaintiff's expense and detriment.

133.    Specifically, Plaintiff conferred the benefit of $500,000 on VP1 in order to obtain equity in VP1 and obtain a green card under the EB-5 Visa Program.

134.    Defendants appreciated the intended benefit of Plaintiff's investment in the Corporation; however, by their wrongful acts and omissions, Defendants misappropriated Plaintiff's investment under such circumstances as to make it inequitable for Defendants to retain the benefit.

### COUNT ELEVEN – Violations of the Federal Racketeer Influenced & Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. ("RICO")

135.    Plaintiff incorporates each preceding paragraph as if fully stated herein.

136.    Together, the Kim Defendants are the controlling majority owners and operators of VP1, in addition to B&B and B&B 2.

137.    The Kim Defendants solicited Plaintiff to initially invest in VP1 by purchasing stock in the Corporation while concealing their fraudulent intent that VP1, acting through the

4840-9880-5656v17
2948778-000001

Kim Defendants, would eventually convert Plaintiff's capital investment from an equity transaction to a debt obligation.

138.    Specifically, in late 2016/early 2017, Plaintiff became interested in applying for permanent residency in the United States.  Around that time, Plaintiff expressed his general interest to Mr. Kim during a meeting in Korea.  During the same meeting, Mr. Kim stated to Plaintiff that he should apply to the EB-5 Visa Program and, instead of investing in a regional center, the Kim Defendants could incorporate a new commercial enterprise in which Plaintiff could invest directly to allow him to apply to the Program.  Mr. Kim explained that while he did not need Plaintiff's money because he was already a millionaire from operating his other businesses, he was interested in helping Plaintiff invest in a new commercial enterprise to gain permanent residency in the United States.  Shortly thereafter, Mr. Kim returned to Memphis.

139.    Between January and March 2017, Mr. Kim continued to speak with Plaintiff over the phone via KakaoTalk.  During these communications, Mr. Kim reiterated that Plaintiff should allow the Kim Defendants to form a new commercial enterprise so that Plaintiff could invest in it and apply for the EB-5 Visa Program.

140.    In making these statements, Mr. Kim and the Kim Defendants knowingly or recklessly failed to disclose material facts regarding their intent to convert Plaintiff's equity interest to a debt obligation when they were soliciting him to invest in VP1.  Mr. and Mrs. Kim informed Plaintiff that his $500,000 investment would be provided in exchange for a 20% ownership stake in the Corporation so he could obtain a green card through the EB-5 Visa Program.  In addition, Mr. and Mrs. Kim stated that they would use Plaintiff's investment in VP1 to operate the business so Plaintiff could proceed with his EB-5 application.

27

141.    The statements and representations above were material to Plaintiff's decision to invest in VP1 as part of his application for a green card through the EB-5 Visa Program.

142.    Based on Defendants' statements and issuance of the common stock, Plaintiff took out a loan from his employer in Korea, Booksan Corp., in the amount of KRW 600,000 ($527,797 USD), with his shares of Booksan Corp. as security for the loan.  Under the terms of the loan, Plaintiff agreed to pay off the loan in 5 years from August 30, 2017 at an annual interest rate of 4.6 % of the principal.

143.    Additionally, Defendants assisted Plaintiff and his counsel in the development of VP1's EB-5 business plan that was submitted to USCIS as part of the I-526 petition.   In particular, Defendants made statements and representations to Plaintiff and his counsel that, among other things, (1) Defendants issued Plaintiff 200,000 shares of common stock in exchange for his $500,000 investment, which constituted a 20% ownership stake in the Corporation, and that (2) VP1 would manage and control Plaintiff's investment to pay for the initial startup and operating costs of VP1.

144.    Based on Defendants' statements and representations, on September 5, 2017, Plaintiff wired his investment of $500,000 in cash to VP1's Regions Bank Advantage Business Checking Account *4956 (the "Regions Account").   Upon information and belief, the Kim Defendants assured Plaintiff that his entire investment in VP1 would to be used to develop the specific EB-5 project described by the Kim Defendants' and VP1's business plan.

145.    Unbeknownst to Plaintiff at the time, however, his $500,000 capital contribution was not used to invest in VP1.  Within weeks of receiving Plaintiff's wire of $500,000, the Kim Defendants began withdrawing large sums of money from the Regions Account to, upon information and belief, fund and operate their separate businesses.

28

146.     Under the direction of Defendants, all or a substantial portion of Plaintiff's $500,000 in VP1 was diverted from the Corporation and used to operate the Kim Defendants' separate businesses in order, directly and indirectly, to enrich the Kim Defendants and entities owned and controlled by them.

147.     The scheme, orchestrated by Defendants, involved inducing Plaintiff to wire $500,000 to VP1, in exchange for equity which was later fraudulently converted to debt, and the diversion and use of Plaintiff's investment to capitalize B&B and B&B 2, whereupon the investment proceeds were used to pay for, among other things, inventory for the benefit and continued operation of those companies, in which VP1 has no equity interest or shared parent company.

148.     Specifically, upon information and belief, Defendants made 5 payments totaling $120,000 from the Regions Account to businesses on behalf of the Kim Defendants' separately owned companies.  Upon information and belief, Defendants directed that these withdrawals or debits be made to operate and manage B&B and B&B 2.

149.     Specifically, on October 23, 2017, Defendants directed that a check for $20,000 be issued to an entity named "Global Beauty Corp."  The memo on the check states that it is for "B&B," which, upon information and belief, is B&B Beauty Supply, Inc., an entity owned and controlled by the Kim Defendants.  Upon information and belief, Defendants made this payment from VP1's Regions Account to purchase inventory for B&B and/or B&B 2, and not VP1.

150.     The next day, on October 24, 2017, Defendants directed that a check for $21,000 be issued to B&B 2.  The memo on the check states that it is for "Shake N Go product purchase."  Upon information and belief, Shake N Go is a beauty product whole supplier, and this check was issued to purchase inventory for B&B 2.  On October 27, 2017, B&B 2 issued check number

29

2178 to Shake N Go for $21,042.00, which, upon information and belief, came from the $20,000 that VP1 paid to B&B 2.  Upon information and belief, the inventory that B&B 2 purchased inventory from Shake N Go with Plaintiff's investment in VP1, yet VP1 never received any money, inventory, or any other compensation or thing of value from the transaction between B&B2 and Shake N Go.

151.   Shortly thereafter, on October 26, 2017, Defendants directed that VP1 pay a debit of $20,000 out of the Regions Account to "Aura Enterprises TNBB03-B&B."  Upon information and belief, Defendants made this payment from VP1's Regions Account to purchase inventory for B&B and/or B&B 2, and not VP1.

152.   On November 3, 2017, another debit of $20,000 was made to "Aura Enterprises SCNB02/TNB."  Prior to the debit, on October 31, 2017, Defendants directed that a check for the same amount be made out to Global, which included in the memo that the check was for "B&B."  Upon information and belief, Defendants made this payment from VP1's Regions Account to purchase inventory for B&B and/or B&B 2, and not VP1.

153.   On November 9, 2017, a debit of $20,000 was made to "Aura Enterprises TNVP01-VAL."  Upon information and belief, Defendants made this payment from VP1's Regions Account to purchase inventory for B&B and/or B&B 2, and not VP1.

154.   On November 21, 2017, a debit of $20,000 was made to "Aura Enterprises TNSB05/S for $20,000."  Upon information and belief, Defendants made this payment from VP1's Regions Account to purchase inventory for B&B, and not VP1.

155.   Upon information and belief, the companies that received the diverted funds, or the proceeds from the diversion of the funds, never intended to and did not provide reasonably equivalent, or any, value to VP1.

4840-9880-5656v17
2948778-000001

156.    As described above, Defendants' acts, omissions, and conduct constituted fraud.

157.    Absent the fraudulent scheme that Defendants orchestrated and perpetrated, Plaintiff's investment in VP1 would not have been diverted to other companies for the express benefit of companies owned and controlled by the Kim Defendants for the direct or indirect benefit of those companies and the Kim Defendants.

158.    By engaging in the foregoing scheme involving fraudulent transactions and communications undertaken to conceal and perpetrate their scheme, the Kim Defendants and their companies intentionally participated in a scheme using the mails and wires to defraud Plaintiff's investment in VP1 and to cause Plaintiff to submit a materially inaccurate I-526 petition to the EB-5 Visa Program by means of material misrepresentations and omissions by the Kim Defendants, and Plaintiff suffered injury as a result of the fraud in the amount of money that Defendants fraudulently procured from Plaintiff.

159.    Through the foregoing conduct, Defendants and their companies, having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by false and deceptive means and pretenses, representations, and promises, transmitted and caused to be transmitted false and misleading communications through the mails and wires in interstate commerce for the purposes of executing such an artifice to defraud, in violation of 18 U.S.C. §§ 1341 & 1343.

160.    The foregoing scheme and each act committed in furtherance thereof violates the National Stolen Property Act, § 18 U.S.C. 2314, et seq., in that Defendants and their companies (1) transported, transmitted, and/or transferred in interstate commerce money and property of a value of $5,000 or more knowing the same to have been stolen, converted, and taken by fraud;

31

and (2) received and disposed of money and property of a value of $5,000 or more that had crossed state lines despite knowing the money had been stolen, unlawfully converted, and taken.

**Violation of 18 U.S.C. § 1962(c) (Against all Defendants)**

161.    Plaintiff incorporates each preceding paragraph as if fully stated herein.

162.    At all relevant times, Plaintiff was a "person" for purposes of 18 U.S.C. §§ 1961(3) and 1964(c).

163.    At all relevant times, each Defendant was a "person" under 18 U.S.C. §§ 1961(3) and 1962(c).

164.    Through the conduct described in this Complaint, Defendants, either alone or in connection with other entities that the Kim Defendants own and control, conducted and/or participated in the conduct of the affairs of various business enterprises, directly or indirectly, through illicit activities constituting a pattern of racketeering, all in violation of 18 U.S.C. § 1962(c), and encompassing conduct in violation of 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); and 18 U.S.C. § 2314 (the National Stolen Property Act).

165.    The foregoing conduct constitutes a pattern of racketeering activity.

166.    B&B and B&B 2 constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

167.    At all times material to this action, Defendants and their companies were and remain engaged in activities that impact interstate commerce, including interstate financial transactions, interstate communications, interstate advertising and solicitation activities, interstate promotion and sale of goods and services, the purchase of movable and immovable property in multiple states, and the like.

4840-9880-5656v17
2948778-000001

168.     As a direct and proximate result of the activities described in this hereinabove, prohibited under 18 U.S.C. § 1962(c), Plaintiff has suffered substantial injury to his business and property.

### Violation of 18 U.S.C. § 1962(b) (Against the Kim Defendants)

169.     Plaintiff incorporates each preceding paragraph as if fully stated herein.

170.     At all relevant times, Plaintiff was a "person" for purposes of 18 U.S.C. §§ 1961(3) and 1964(c).

171.     At all relevant times, each Defendant was a "person" under 18 U.S.C. §§ 1961(3) and 1962(c).

172.     Through the conduct described in this Complaint, the Kim Defendants maintained interests in or control over B&B and B&B 2 in violation of 18 U.S.C. § 1962(b).

173.     Through the conduct described in this Complaint, the Kim Defendants maintained interests in or control over B&B and B&B 2 through illicit activities constituting a pattern of racketeering, all in violation of 18 U.S.C. § 1962(b), and encompassing conduct in violation of 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); and 18 U.S.C. § 2314 (the National Stolen Property Act).

174.     As a direct and proximate result of the foregoing activities prohibited by 18 U.S.C. § 1962(b), Plaintiff has suffered substantial injury to his business and property.

### Violation of 18 U.S.C. § 1962(a) (Against all Defendants)

175.     Plaintiff incorporates each preceding paragraph as if fully stated herein.

176.     At all relevant times, Plaintiff was a "person" for purposes of 18 U.S.C. §§ 1961(3) and 1964(c).

4840-9880-5656v17
2948778-000001

177.     At all relevant times, each Defendant was a "person" under 18 U.S.C. §§ 1961(3) and 1962(c).

178.     As described above, Defendants stole and wrongfully converted Plaintiff's $500,000 investment in VP1 through fraudulent acts.

179.     In order to perpetuate and conceal their schemes, Defendants caused Plaintiff's capital contribution in VP1, which they received through transactions that constitute a pattern of racketeering activity, to be used in the operation of the Kim Defendants' separate companies in violation of 18 U.S.C. § 1961(a).

180.     The transactions described in this Complaint constitute a pattern of racketeering activity, encompassing conduct in violation of 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); and 18 U.S.C. § 2314 (the National Stolen Property Act).

181.     Plaintiff has been substantially injured in his business and property as a direct and proximate result of the foregoing violations of 18 U.S.C. § 1962(a).

**Violation of 18 U.S.C. 1962(d) – Conspiracy to Violate 18 U.S.C. § 1962(a), (b), (c) (Against all Defendants)**

182.     Plaintiff incorporates each preceding paragraph as if fully stated herein.

183.     As described in this Complaint, Defendants procured Plaintiff's investment in VP1 through fraudulent and/or materially misleading information and then caused Plaintiff's investment to be diverted from VP1 and to other entities for the ultimate benefit and gain of other companies owned and controlled by Defendants.

184.     The transactions described in this Complaint constitute a pattern of racketeering activity, encompassing conduct in violation of 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); and 18 U.S.C. § 2314 (the National Stolen Property Act).

34

185.     Defendants conspired, confederated, and agreed with one another to violate 18 U.S.C. § 1962(a), (b), and (c) in violation of 18 U.S.C. § 1962(d) through the conduct set forth in this Complaint.

186.     Specifically, Defendants and their companies conspired, confederated and agreed with one another to procure Plaintiff's $500,000 wire investment in VP1 through means of false and/or materially misleading statements or omissions and to use the funds and proceeds obtained from the transactions described in this Complaint, which constitute a pattern of racketeering activity, in: (a) the acquisition, establishment, and/or operation of; (b) maintaining interests in or control over; and (c) conducting or participating in, directly or directly the conduct of the affairs of, B&B, B&B 2, and/or VP1.

187.     As a direct and proximate cause of the violation of 18 U.S.C. § 1962(d) by Defendants and their companies, by conspiring to violate 18 U.S.C. § 1962(a), (b), and (c) and their overt racketeering acts, Plaintiff has been directly financially harmed in his business and property and is entitled to recover treble damages and attorney's fees under 18 U.S.C. § 1964(c).

## JURY DEMAND

188.     Plaintiff demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Minwoo Park prays that, upon due proceedings, judgment be rendered herein in his favor as follows:

1.     Awarding to Plaintiff money damages, including treble damages, against all Defendants, jointly and severally, for all losses, injuries, and damages suffered by Plaintiff, including but not limited to $525,675, as a result of Defendants' federal and state law violations, including statutory penalties, and prejudgment interest as appropriate;

4840-9880-5656v17
2948778-000001

2.      In the alternative, Awarding to Plaintiff for rescission damages against all Defendants, jointly and severally, for all losses, injuries, and damages suffered by Plaintiff as a result of Defendants' federal and state law violations;

3.      Regardless of whether money damages or rescission is awarded, awarding to Plaintiff punitive damages against all Defendants, jointly and severally, for all losses, injuries, and damages suffered by Plaintiff as a result of Defendants' fraudulent otherwise willful, wrongful misconduct in violating federal and state law;

4.      To the extent consistent with the other remedies awarded, awarding to Plaintiff his attorney's fees and costs of this suit and prejudgment interest as authorized by law and/or equity;

5.      Awarding to Plaintiff an accounting of all financial activities of Defendants in regard to the funding and operation of VP 1-1, Inc. and the Kim Defendants' separate businesses;

6.      Awarding to Plaintiff all other relief to which he may be permitted at law or in equity upon the premises hereof.

This, the 21st day of June, 2019.

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

*s/ Lori H. Patterson*
Lori H. Patterson (Tenn. Bar No. 19848)
W. Preston Battle IV (Tenn. Bar No. 35044)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone  (901) 526-2000
Fax:  (901) 577-2303
Email:  lpatterson@bakerdonelson.com
             pbattle@bakerdonelson.com

*Attorneys for Plaintiff Minwoo Park*

37